IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELANIE L. HENSON,                    )
                                      )
              Plaintiff,              )
                                      )
     vs.                              )    Civil Action No. 97-925
                                      )
JOHN E. POTTER, POSTMASTER            )
GENERAL OF THE UNITED STATES          )
POSTAL SERVICE,[1]                    )
                                      )
              Defendant.              )

MEMORANDUM

I

Before the Court is the motion of plaintiff, Melanie L.

Henson, to reopen this closed case (Document No. 13) and the

motion of defendant, John E. Potter, Postmaster General of the

United States Postal Service, to dismiss or, in the alternative,

for summary judgment. (Document No. 22). For the reasons set

forth below, plaintiff's motion to reopen will be denied,

defendant's motion to dismiss will be denied and defendant's

motion for summary judgment will be granted.[2]

_____

1. When plaintiff filed this employment discrimination action
against the United States Postal Service on May 21, 1997, Marvin
Runyon was the Postmaster General, and, therefore, he was the
named defendant. Since the filing of this action, Mr. Runyon has
been succeeded by two Postmasters General. The current
Postmaster General is John E. Potter, and, therefore, under Rule
25(d) of the Federal Rules of Civil Procedure, Mr. Potter is
automatically substituted as the defendant.

2. Defendant submitted evidence in support of his motion to
dismiss or, in the alternative, for summary judgment, which the
(continued...)

1


II

For purposes of the present motions, the following facts are undisputed:

Plaintiff is a former employee of the United States Postal Service. On May 21, 1997, plaintiff, who was represented by counsel, filed this civil action against defendant, alleging employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. The case settled prior to trial, and, in April 1998, the parties executed a "Release and Stipulation for Compromise Settlement" pursuant to which plaintiff agreed to settle any claim she may have against the United States Postal Service as of the date of the settlement agreement for a sum of money ($7,500), attorney's fees ($10,000) and transfer to a "Mail Handler, Rehabilitated" position. (Document No. 13, Exhibit 1, Document No. 23, Exhibit A).

Following the settlement of this case, plaintiff sustained a work-related injury and filed a claim with the Office of Workers' Compensation Program ("OWCP") in early September 1999. The OWCP accepted plaintiff's claim as a temporary aggravation of a previous condition for the period September 1, 1999 to October 31, 1999. On November 1, 1999, plaintiff reported to work;

(...continued)
Court has considered. Under the circumstances, defendant's motion to dismiss will be denied and the Court's decision will be limited to defendant's motion for summary judgment.

2

however, it was determined at that time that she was "unfit for duty" and she was not permitted to return to work.  (Document No. 13, p. 2, ¶ 5).

On January 5, 2000, plaintiff filed an Equal Employment Opportunity ("EEO") Complaint of Discrimination in the Postal Service, alleging (1) retaliation for prior EEO activity, *i.e.*, prior EEO complaints and this lawsuit and the ensuing settlement agreement, (2) disability discrimination, *i.e.*, different treatment due to a permanent partial disability involving plaintiff's left shoulder, and (3) violation of the parties' April 1998 settlement agreement.[3]  In the EEO complaint, plaintiff alleged that Mary Keck, Manager of Injury Compensation, and Dr. Tauberg, a contract physician with the United States Postal Service's General Mail Facility in Pittsburgh, Pennsylvania, were the persons who engaged in the alleged discriminatory action, and that the alleged acts of discrimination occurred on September 1, 1999, October 6, 1999 and November 1, 1999.  (Document No. 23, Exhibit B).

On February 16, 2000, defendant sent the following letter to plaintiff:

---

3. When the parties reached a settlement of this case, a stipulation to dismiss with prejudice was filed and approved by the Court in an order dated April 23, 1998.

3

MEMORANDUM FOR:      MELANIE HENSON
                     1016 SOUTH RD
                     PITTSBURGH, PA 15209-1508

SUBJECT:             Official Notice to Return to Duty

Please be advised that you are to immediately schedule an
appointment with the United States Postal Service Medical
Unit, Pittsburgh GMF, to be evaluated for return to duty.

As your recent claim for an allergic reaction was denied by
the U.S. Department of Labor, Office of Worker's
Compensation (OWCP), your absence from work without proper
medical documentation detailing the specific nature of your
condition is both unauthorized and unacceptable.

The Medical Unit is open Mondays and Fridays, 8:00 AM to
12:00 Noon, and on Wednesdays, from 1:00 to 3:30 PM.  The
telephone numbers for the Medical Unit are (412) 359-7590,
7591, and 7593.

**You must schedule and complete your appointment with the
Medical Unit prior to Friday, February 25, 2000.**  When you
are cleared by the Medical Unit for return to duty, you will
report to Operations Programs Support, Room 2038, GMF,
Pittsburgh, to receive your job assignment.  (Emphasis in
original).

Enclosed is WH Publication 1420, "Your Rights Under the
Family and Medical Leave Act (FMLA) of 1993"; Publication
71, "Notice for Employees Requesting Leave for Conditions
Covered by the Family and Medical Leave Act"; and FMLA
certification forms to be completed and certified by you,
your physician, and your health care provider.  These forms
have been provided to you in the event that you desire to
file for Family Medical Leave.

If you have any questions, please contact Ray Perret,
A/Retail & Delivery Analyst, Sr., at (412) 359-7103.

Kathleen Johnston-Bauer
A/Manager, Operations Programs Support

(Document No. 23, Exhibit E).

     When plaintiff failed to schedule an appointment with the

United States Postal Service Medical Unit as directed in the

4

February 16th letter, defendant sent the following letter to

plaintiff on March 2, 2000:[4]

MEMORANDUM FOR:    MELANIE HENSON
                   1016 SOUTH RD
                   PITTSBURGH, PA 15209-1508

SUBJECT:           Official Notice to Return to Duty

In a certified letter (P 060 699 647) sent to you on
February 16, 2000 and received by you on February 17, 2000,
you were directed to schedule an evaluation for return to
duty by the United States Postal Service Medical Unit,
Pittsburgh GMF, prior to Friday, February 25, 2000.

As you have not complied with my official notice to return
to duty, please be advised that you have ten working days
(prior to March 20, 2000) to schedule your return to duty
evaluation with the United States Postal Service Medical
Unit, Pittsburgh GMF.

As you know, your recent claim for an allergic reaction was
denied by the US Department of Labor, Office of Worker's
Compensation.  I must reiterate that your absence from work
without proper medical documentation detailing the specific
nature of your condition is again both unauthorized and
unacceptable.

                      *    *    *

**Failure to comply with this official notice to return to
duty may result in discipline, up to and including
termination.**  (Emphasis in original).

If you have any questions, please call me at (412) 359-7850.

Walter T. Weismantel
Manager, Operations Programs Support

(Document No. 23, Exhibit F).

_____

4. Plaintiff claims that she never received defendant's March 2,
2000 letter.  (Document No. 28, p. 3).  However, this issue of
fact is not material to the Court's determination that
plaintiff's motion to reopen this case must be denied.

Plaintiff subsequently applied for a disability retirement from the United States Postal Service, which was approved and became effective on April 4, 2001. (Document No. 23, Exhibit G). Thus, as of April 4, 2001, plaintiff's employment relationship with the United States Postal Service ended.[5]

On March 13, 2000, shortly before the effective date of plaintiff's disability retirement, a decision was issued partially accepting and partially dismissing the EEO complaint filed by plaintiff on January 5, 2000. Initially, the decision notes that plaintiff alleged discrimination based on the following four actions: (1) on September 1, 1999, proper investigative procedures were not followed when plaintiff completed a form CA-2; (2) on October 1, 1999, the Postal doctor failed to reasonably accommodate plaintiff's medical condition with a change of environment; (3) on November 1, 1999, plaintiff was denied the result of an air quality test performed on Room 2047; and (4) on November 1, 1999, the Postal doctor found plaintiff "unfit for duty" and she was removed from the postal facility, although he had declared her "fit for duty" earlier that day. The decision then goes on to state that the three alleged discriminatory actions on October 1, 1999 and November 1, 1999 would be accepted for investigation, but that the alleged

_____

5. According to plaintiff's motion to reopen this case, she continues to receive a disability pension from the United States Postal Service. (Document No. 13, ¶ 16).

6

discriminatory action on September 1, 1999 would not be accepted
for investigation and would be dismissed due to plaintiff's
failure to initiate contact with an EEO Counselor within 45 days
of the alleged discriminatory action in accordance with 29 C.F.R.
§ 1614.105(a)(1). (Document No. 23, Exhibits C and D).

In October 2001, six months after plaintiff's disability
retirement became effective, plaintiff, who was represented by
counsel, and the United States Postal Service entered into a
"Settlement Agreement and Release of All Claims" relating to the
EEO complaint filed by plaintiff on January 5, 2000. The
settlement agreement provided, *inter alia*, that plaintiff would
promptly dismiss the January 5, 2000 EEO complaint in exchange
for a sum of money ($6,500) and attorney's fees ($2,500). With
regard to the breadth of the settlement agreement, paragraphs 3
and 7 provide:

\*   \*   \*

3. In exchange for the promises made by the Postal
Service in this agreement, Melanie L. Henson, for herself,
her heirs, legal representatives, and assigns, hereby
releases and forever discharges the Postal Service and its
employees, officers, agents, agencies and assigns from **any
and all** claims, demands, obligations, actions, causes of
action, damages, attorney's fees, costs, expenses, and
compensation of any kind whatsoever, both legal and
equitable and including but not limited to any and all
claims for compensatory damages, back pay, front pay and the
interest thereon, which Melanie L. Henson now as (sic) or
may hereafter acquire against the Postal Service **on account
of the allegations contained in the above-captioned
administrative complaint of discrimination**. (Emphasis
added).

7

* * *

> 7. Melanie L. Henson declares that she has read and reviewed this Agreement with her attorneys, Thomas J. Cordaro and John E. Gabriel, and fully understands the terms of such Agreement and that she voluntarily accepts it for purposes of making a full and final compromise of ***all claims of any nature*** which she may have against the Postal Service ***up to the date of this Agreement or in connection with the allegations of the above-referenced administrative complaint of discrimination***. (Emphasis added).

* * *

(Document No. 23, Exhibit H).

On September 14, 2006, plaintiff, proceeding *pro se*, filed a two-count "Petition" at the above-captioned civil action, which has been deemed to be a motion to reopen this case, alleging that defendant breached the parties' April 1998 settlement agreement by "put[ting] the Plaintiff out of the building on November 1, 1999 allegedly because she was 'Unfit for Duty,'" which constituted a termination without cause in violation of United States Postal Service policy.[6] Plaintiff further alleges that despite numerous contacts with defendant, she has not been successful in being reinstated to her former position with the United States Postal Service or in recovering all the wages and

---

6. With respect to plaintiff's claim that defendant terminated her employment without cause on November 1, 1999, the Court notes that this claim is inconsistent with the letters sent to plaintiff by defendant on February 16, 2000 and March 2, 2000, directing plaintiff to schedule an appointment with the United States Postal Service Medical Unit for a return to work evaluation and advising plaintiff that her failure to do so "may result in discipline, up to and including termination." (Document No. 23, Exhibits E and F).

benefits to which she is entitled under the circumstances.[7]
(Document No. 13, p. 2, ¶¶ 5-9).  Plaintiff's two-count
"Petition" fails to mention any events occurring after November
1, 1999, including the EEO complaint she filed against the United
States Postal Service on January 5, 2000 and the settlement
agreement executed by the parties in October 2001 to resolve the
claims raised in that EEO complaint as well as any other claims
plaintiff may have had against the United States Postal Service
as of the date of the October 2001 settlement agreement.

III

Rule 56(c) of the Federal Rules of Civil Procedure mandates
the entry of summary judgment, after adequate time for discovery
and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322,
106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986).  At the summary
judgment stage, the court's function is not to weigh the evidence

7. Plaintiff alleges in her two-count "Petition" that she
receives a disability pension, as well as disability insurance
benefits from the Social Security Administration (but that these
monthly payments do not equal the salary she received while
employed by the United States Postal Service).  (Document No. 13,
¶ 16).  In this connection, the Court notes that plaintiff's
apparent desire for reinstatement to her former position with the
United States Postal Service (Document No. 13, ¶ 9) is
inconsistent with her receipt of Social Security disability
benefits which are based on the inability of an individual to
engage in any substantial gainful activity.

9

and determine the truth of the matter, but to determine whether
there is a genuine issue for trial.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202,
212 (1986).  The existence of a factual dispute between the
parties will defeat an otherwise properly supported motion for
summary judgment only if there is a "genuine" issue of "material"
fact.  Id. 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.
Keeping this standard in mind, the court turns to defendant's
motion for summary judgment.

IV

As noted by defendant, an employee may waive a cause of
action under Title VII as part of a voluntary settlement.
Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1973).  *See
also* Spiridigliozzi v. Bethlehem Mines Corp., 558 F.Supp. 734,
736 (W.D.Pa.1980)("... settlements reached in pursuance of EEOC
practice are entitled to the same treatment as voluntary
settlements of litigation generally.  There is no favored status
for EEOC complainants entitling them to unusual liberality in
disregarding settlements such as might be found to exist in the
case of admiralty proceedings involving seamen (who are
traditionally regarded as wards of the court).  What would amount
to waiver, release, or covenant not to sue in any civil
litigation is sufficient to produce the same consequences with
respect to matters covered by EEOC charge[s].").

10

Based on the clear and unequivocal language of the
settlement agreement executed by the parties in October 2001 as a
result of the EEO complaint filed by plaintiff on January 5, 2000
(which plaintiff conveniently omits from her recitation of the
facts in the motion to reopen), plaintiff's motion to reopen this
case must be denied.  Specifically, in Paragraph 3 of the
parties' October 2001 settlement agreement, plaintiff expressly
agreed to settle "any and all claims" she had or may thereafter
acquire against the defendant "on account of the allegations
contained in the above-captioned administrative complaint of
discrimination," and, as noted by defendant, the claims asserted
by plaintiff in the two-count "Petition" filed on September 14,
2006 (i.e., plaintiff's alleged wrongful removal from the postal
facility on November 1, 1999 on the ground that she was "unfit
for duty" and defendant's alleged breach of the parties' April
1998 settlement agreement) are identical to claims raised by
plaintiff in the January 5, 2000 EEO complaint.  Further, in
paragraph 7 of the parties' October 2001 settlement agreement,
plaintiff expressly agreed to settle "all claims of any nature
which she may have against the Postal Service up to the date of
this Agreement...."  Thus, plaintiff's attempt to distinguish the
claims asserted in the two-count "Petition" she recently filed

11

from the claims asserted in her January 5, 2000 EEO complaint is unavailing.[8]

In sum, (1) the language of the parties' October 2001 settlement agreement regarding the scope of its coverage is crystal clear, (2) the October 2001 settlement agreement was supported by substantial consideration, (3) plaintiff was represented by counsel at the time she executed the October 2001 settlement agreement, and (4) there is no evidence of undue influence or fraud. Under the circumstances, plaintiff's motion to reopen this case will be denied and defendant's motion for summary judgment will be granted.

William L. Standish
United States District Judge

Date: January 2, 2007

---

8. Plaintiff asserts that she "is not seeking to revive the employment discrimination case as argued in Defendant's Memorandum of Law. Rather, [she] is seeking to have the Non-Retaliation Clause in that Agreement enforced." (Document No. 28, p. 1).

12